**LARIMORE, Plaintiff-Appellee v. BROWN, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3634. Decided October 5, 1943.

386

Rocker & Schwartz, Cleveland; Yearick & Hughes, Newark, for plaintiff-appellee.

B. B. Bridge, Columbus; Tom Renick, Circleville, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment in. behalf of the plaintiff and against the defendant for $1500.00 and costs, for damages for injuries found to have been suffered by plaintiff by reason of the negligence of defendant-appellant in preparing and furnishing certain vaccine for the treatment of a skin disease known as acne from which plaintiff was suffering. The errors are assigned under two main headings. The first assignment is presented under six sub-headings. We will state the assignments as they are considered.

The averments of the second amended petition which plaintiff's testimony tended to prove were, that, sometime prior to the fall of 1938 plaintiff had been suffering from a skin disease known as acne. Upon the suggestion and advice of her physician, Dr. Allen Avery of Alexandria, Ohio, she called upon the defendant who operated a laboratory known as "Dr. Brown's Clinical Laboratory" at Columbus, Ohio, who after an examination of the plaintiff advised her that her condition. might be improved if she would use a vaccine made from the substance taken from the pustules on her face or neck, and thereupon, the defendant took a specimen from which he prepared a bottle of vaccine which was delivered to the plaintiff on November 21, 1938. That the defendant advised the plain-. tiff that the course of treatment would require the use, successively, of three bottles of the vaccine to be injected as di-. rected. The contents of this first bottle was used by plaintiff as directed and it is her claim, that, although the defendant had agreed to forward another bottle to Florida, where she had in the meantime moved, he did not do so. Upon plaintiff's return to Columbus in July, 1939, she obtained other bottles of the vaccine which were used according to directions.

None of this vaccine caused any ill effects to plaintiff. On or about November 27, 1939, plaintiff obtained another bottle of the vaccine from the defendant and upon the next day took it to Dr. Avery who injected a part thereof, according to directions, into plaintiff's arm. Immediately thereafter a lump appeared on the arm where the injection had been made, to which Dr. Avery's attention was called. Thereafter Dr. Avery made several injections after which, on each occasion, a hard lump appeared where the injections were made. Thereafter, and in December of 1939, plaintiff left for Florida, took the bottle of vaccine with her and there her husband injected the vaccine into her arm, according to directions, on several occasions. In all instances the after effects thereof being as heretofore experienced following the injections by Dr. Avery. She discontinued these injections on February 12, 1940. In August, 1940, plaintiff returned to Columbus, called upon Dr. Brown and explained to him the effect of the injections of the vaccine contained in the bottle which she had taken to Florida with her in December, 1939. Dr. Brown advised her to return the unused portion of the vaccine in the bottle in which it was contained, advising her that he would re-sterilize the contents, and later she obtained the re-sterilized vaccine, took it to Dr. Edgar Johnson, an associate of Dr. Avery, who, in the presence of Dr. Avery, injected the vaccine, according to directions of defendant, into plaintiff's leg. Following this injection, a lump developed which thereafter abscessed. Plaintiff then again called upon Dr. Brown, who requested that she bring the bottle and its contests to him for test, but instead she took it to the laboratory of Ohio State University, where it developed that the vaccine was not sterile, but contained 600,000,000 bacillus subtilis per c.c., which, it was testified, upon injection, was injurious.

The claim of the plaintiff is that the defendant was negligent in the taking of the specimen preliminary to the making of the vaccine and in the preparation thereof, and that he was negligent in attempting to re-sterilize the vaccine and in the manner and method employed in such re-sterilization. The plaintiff testified that upon two occasions when the defendant opened the pustules on her neck for the purpose of securing a specimen therefrom, he did not sterilize the skin in any manner before taking the specimen. Experts testified in behalf of the plaintiff as to the proper technique in taking the specimen preparatory to the making of the vaccine and as to the approved procedure and method in the handling of

the specimen and the preparation of the vaccine preparatory to its use.

The defendant was called upon cross-examination and testified fully, and in detail, as to the subject matter at issue, and although upon cross-examination, he did set forth the procedure adopted by him incident to the taking of a specimen and the technique employed by him thereafter in the preparation of the vaccine; also, as to the manner in which he handled the vaccine which he re-sterilized for the plaintiff. His testimony in many particulars was in direct refutation of the evidence of the plaintiff as offered by her and her husband. The method employed by him in growing a culture from the specimen taken from the pustules on the neck of plaintiff was testified to be improper by different experts who were produced on behalf of the plaintiff. It was also expressly testified by such experts that, in their judgment, assuming that the injections of the serum were made under sterile and proper conditions, the preparation of the vaccine was made under unsterile conditions, and that re-sterilization should not have been undertaken, and that the method followed by the defendant, according to his testimony, was not approved or proper procedure.

During the trial of the cause and after three days of the taking of testimony on behalf of the plaintiff, and after the defendant had testified on cross-examination, it was reported to the court that he had become ill, which condition, according to his attending physicians, was caused by the recurrence of an ulcerous condition of the stomach, accompanied by bleeding. When this development was reported to the court, counsel for defendant moved for the withdrawal of a juror and the continuance of the cause. The court took the matter under advisement, and, thereafter, the defendant was examined by two physicians, both of whom reported and testified that, in their judgment, the doctor's physical condition was such that he could safely testify at the trial, or give his deposition at his home. Two doctors who had attended him testified that it would be unsafe for him to venture into the court room to testify, or to be subjected to the excitement incident to the taking of his deposition.

The court overruled the motion of defendant for a continuance and the cause proceeded, the defendant offering no testimony except by one of the defendant's counsel, Mr. Tom A. Renick, whose testimony was accepted in part and rejected in part over the objection of counsel for defendant.

The jury, eleven members thereof signing the verdict, one by agreement having been excused early in the trial of the

cause, returned its verdict for plaintiff in the sum of $1500.00, upon which, after motion for new trial and motion for judgment veredicto non obstante had been overruled, the court entered judgment.

The first of six errors assigned, all coming under the heading that the court erred in overruling defendant's motion for a new trial, is, error in the admission of certain testimony on behalf of the plaintiff. During the direct examination of plaintiff, she was interrogated as to the occurrences on the occasion of her first visit to defendant at his office and as to the conversation there had between them. She stated that defendant brought in a needle, punctured one of the pustules on her neck and removed pus from it and did not cleanse her face before or after taking the specimen, and that she inquired of the doctor why he didn't cleanse her face with some antiseptic, and stated to him that she had been told repeatedly that that should be done, and what the doctor said to her in reply.

It is asserted that the foregoing testimony was incompetent and prejudicial. We think not. It was a part of the procedure incident to the relationship between the defendant and the plaintiff out of which eventually she claims her cause of action arose. It was so essentially a part of the whole transaction that without it a jury could not get a full, complete and correct understanding of the relationship. Then, too, as the answer was made by the plaintiff respecting the failure of the defendant to use any antiseptic on her face, it related not only to the occurrence when he first took a specimen, but to the last occasion when he took the specimen, from which, in probability, the vaccine was made, the use of which is the basis of the ill effects which plaintiff claims she suffered. The conversation between the doctor and the plaintiff as narrated by her, likewise was essentially a proper part of the res gestae of plaintiff's claim or cause of action and, if it occurred, was inferentially confirmatory of the averment of the pleading that the defendant did not have the correct or approved conception of due precaution in the procedure incident to the preparation of the vaccine.

Dr. Ralph M. Hartwell testifying for the plaintiff was inquired of:

"Would you say that failure to sterilize a part of the skin from which the matter is obtained would be improper?"

He was permitted to answer the question, and stated: "I would." For the reasons heretofore suggested in discussing

the admissibility of the testimony of the plaintiff on the same subject matter, it was not erroneous nor prejudicial to admit the answer of the doctor. Objection is further made to the admission of other answers by the doctor, no one of which we feel was erroneously admitted. The witness was also permitted to testify concerning certain standards for testing vaccines to be shipped in interstate commerce. He was permitted to state these rules, that he followed them, and that all the laboratories with which he was connected followed like procedure. The court struck out and instructed the jury to disregard an answer made by the doctor as to the application of interstate commerce law to the preparation and transmission of the vaccine under consideration. Within the limits to which the court restricted the testimony we do not find it objectionable.

The doctor was also permitted to express an opinion to account for the presence of organism in the vaccine upon a hypothetical question respecting the contents of bottle "Exhibit 7", its use by the plaintiff and the conditions under which it was injected, and with the assumption that immediately following the delivering of the vaccine by the laboratory when first used a few days after its delivery the vaccine was suspected of containing live bacteria, the answer was:

"Based on the assumption the organism must have been present at the time the first material was removed from the bottle,"

and further, that the organism must have been present at the time it was delivered to the patient. We believe all the hypotheses were supported by evidence and that the questions were proper as were the answers.

Objection was also made to questions put to Dr. Wm. Alfred Starim and the admission of answers thereto, relating to the necessity of sterilizing that portion of the face from which pus was taken before removing it from an open acne. We have heretofore determined this matter as to a like question propounded to Dr. Hartwell. The admissibility of the testimony of Dr. Winsel in reply to hypothetical questions is challenged, but these questions were very much like those propounded to Dr. Hartwell, which we have heretofore approved.

Mr. Stanley Larimore, husband of the plaintiff, was permitted to testify that he sent a telegram to his wife in Florida

and the same day a letter to the effect that he had called upon the defendant and had been instructed by him to throw away the hypodermic needle, get a complete new outfit, and stop taking the shots. This telegram and letter it was testified by the witness were sent to his wife following a conversation with the defendant in which he was informed of the experience that the plaintiff had suffered in Florida by reason of the injections of the vaccine prepared and provided for her by the defendant. The telegram and letter purport to restate the observation and directions of the doctor to plaintiff. These exhibits were tendered and admitted on behalf of the plaintiff. In our judgment, the statements as to what Mr. Larimore communicated to his wife and the exhibits were not competent testimony. In so far as they purported to set forth the directions of the doctor, they could not have accounted for anything which the plaintiff did respecting her use of the vaccine because it appears that she had discontinued its use before the letter and telegram were sent. It was erroneous for the court to admit the testimony and the exhibits. However, it reasonably appears that the admission of these exhibits could not under the facts developing have prejudiced the defendant. They did not set forth anything further than the testimony of the witness and do not suggest a source of infection which is inconsistent with the claim of the defendant by his counsel nor upon his testimony.

Moreover, it develops upon answers to interrgatories submitted to the jury upon request of the defendant, that it found against the defendant upon two issues, first, that the vaccine as delivered to the plaintiff prior to her trip to Florida in '39 was unsterile and caused to be so by the negligence of the defendant, and, likewise, the vaccine as delivered to her after her return from that trip and used by Dr. Johnson was likewise unsterile and caused to be so by the negligence of the defendant. The letter and telegram could only have had application to the injection of the vaccine during the time that she was in Florida and could not affect at all, except inferentially, the question as to how the vaccine became contaminated at the time that Dr. Johnson administered it.

We have examined all of the claimed errors respecting the admission of testimony and exhibits on behalf of the plaintiff and with the exception of the admission of the testimony of Mr. Larimore and the exhibits, which we have heretofore discussed, there was no error on the part of the court in the rulings made.

It is next claimed that the court erred in rejecting certain testimony offered by the defendant through Mr. Tom Renick, one of defendant's counsel, to express the reason why Dr. Brown was not called upon to testify after he had been reported to be ill. The witness was permitted to state that Dr. Brown was confined to his bed at his home, that he, the witness, had consulted with Dr. Mark Godfrey, defendant's attending physician, with reference to defendant's condition. This question was then put:

"And did Dr. Godfrey give you any advice with respect to the advisability of Dr. Brown appearing here as a witness in his behalf?"

The court refused to permit the testimony, and an answer was proffered to the effect that if the witness were permitted to answer he would say:

"Yes, Dr. Godfrey advised me that Dr. Brown's condition was such that it would be inadvisable for him to appear as a witness in this case and testify either personally or by deposition for the reason that in all probability such appearance either by deposition or otherwise would be prejudicial and injurious to his health."

The court properly refused the testimony. It was nothing more than hearsay. If it was desired that the jury be given the benefit of the proffered answer it should have been adduced by the testimony of Dr. Godfrey.

The next assignment is that the trial court grossly abused his discretion in overruling defendant's motion for continuance.

This presents a difficult question and likewise reflects a delicate situation with which the trial judge was confronted at the time that the question arose. However, upon a careful consideration of all of the testimony on the subject of the physical condition of Dr. Brown, in connection with his testimony developed on his cross-examination, we are not prepared to say that the trial judge abused his discretion in refusing the continuance. Some claim is made that the court erred in denying counsel for defendant the right to redirect examination after cross-examination. We do not find this claim exemplified on the record, although it may have occurred. We note a paragraph in the brief of counsel for defendant

wherein it is admitted that the true situation is not presented in the record, and that, unless counsel agree that it become a part of the record, there will be an order for a request of diminution. We cannot consider and discuss assigned errors merely on agreement of counsel, by way of brief, that the record should disclose a certain fact not appearing therein. In any event, it is quite certain that any examination of defendant by his counsel could not properly have been afforded before the conclusion of his testimony on cross-examination by the plaintiff and when the defendant was excused by the plaintiff it was with a reservation of the right to recall him. The mere statement of counsel that they desired the opportunity to conduct redirect examination of the plaintiff would not sufficiently present the question whether or not such testimony was admissible without the specific question or questions desired to be propounded to the witness appearing. The legal question of the limits of the right of re-examination by his own counsel of a party who has been called and has testified on cross-examination is not presented with sufficient definiteness in this record to require its further discussion.

It is claimed that the court erred in refusing to give to the jury, as a part of the general charge, a request for further instructions made by the defendant.

Before the general charge, at the request of defendant, the court gave to the jury an extended and comprehensive charge predicated upon the theory that the plaintiff charged the defendant with negligence in the manufacture, preparation or handling of the vaccine or vaccines in question and setting forth the obligation of proof upon the plaintiff respecting such negligence and that if found, it must be determined to be the direct or proximate result of the negligence of the defendant. The court's general charge followed like conception of the law controlling the case and, as a part of that charge, the court again read in its entirety the special instruction of the defendant given before argument. At the conclusion of the general charge upon query of the court if counsel had further suggestions, defendant's counsel requested the court to charge the jury that "before they could return a verdict for the plaintiff, the plaintiff must establish by the greater weight of the evidence a standard of care to be exercised in the preparation, manufacture, and handling of vaccine" which request the court refused and exceptions noted. Upon the situation thus presented we are satisfied that no prejudicial er-

ror resulted to the defendant in the failure of the court to further charge respecting the technique to be observed by the defendant in handling and preparing the vaccine. The evidence very fully developed the claim of the plaintiff as to the method which must have been followed by the defendant in securing, handling, and preparing the vaccine to assure that it would be sterile for use and the claim of the defendant as to the technique which would constitute the observance of due care. The degree of skill incumbent upon the defendant to exercise as set out in **Gillette v Tucker, 67 Oh St 106,** was followed in the general charge of the court. In view of the special charge and in light of the general charge, we cannot say that there was prejudicial error in the failure of the court to state more specifically in the general charge the technique which should have been followed by the defendant to constitute due care. As a matter of fact, this question of technique was for factual determination by the jury.

It is further claimed that the verdict of the jury was against the manifest weight of the evidence. As we have heretofore said, there was supporting testimony as to all hypotheses in the questions propounded to the experts which together with their answers made sufficient proof, in our judgment, to support the verdict and judgment.

The case of Tremaine v Mulford, 317 Pa. 97; 176 Atl. 212, is specially cited. Without discussing at length the extended facts upon which this decision was pronounced, suffice to say, that there are marked differences in the developments of the testimony in the cited case and the instant case. Here there is express testimony as to the method employed by the defendant in taking the specimen from which the vaccine was made and in its handling thereafter not only as originally prepared but as re-sterilized. In particulars wherein the defendant himself states his procedure, the correctness thereof is challenged and questioned by the experts who testified for the plaintiff. The last injection in the leg of plaintiff made by a physician, Dr. Johnson, related to the use only of the so-called re-sterilized vaccine. The technique employed by the defendant in the so-called re-sterilization was in the record. The jury had a right to find, as plaintiff's experts assumed in their answers to the hypothetical questions, that, in the use of the vaccine, especially by Dr. Johnson, all necessary and essential precautions to prevent contamination of the vaccine from any outside source had been taken; that it was con-

taminated when it was injected into the leg of the plaintiff and had in probability been so contaminated by the failure of the defendant to use due care in its re-sterilization, if it could have been re-sterilized, and, finally, that the result attending the injection was caused by the foreign matter in the vaccine. The element of conjecture upon which the court relied in the cited case is not present in the instant action.

The amount of this judgment is small and it is somewhat difficult to understand why the jury resolving the cntrolling factual questions in favor of the plaintiff as to her right to recover damages, should have assessed the amount thereof as low as $1500.00. Counsel for defendant concede that if the verdict and judgment are supported, the amount thereof is not to be questioned on this appeal.

The second assignment of error relates particularly to the sustaining of defendant's motion for judgment in his favor notwithstanding the verdict. This is largely supported upon the claim that the proof adduced did not afford sufficient basis on all material elements essential to plaintiff's recovery to support the verdict. We have discussed this question generally heretofore and the application of Tremaine v Mulford, supra, which is especially cited in this assignment. Upon the careful reading of every line of testimony in this case, together with the briefs, we find no prejudicial error in any of the particulars assigned.

We would be remiss if we did not at this time express our appreciation to counsel for defendant for the assistance to the court afforded by the arrangement of their brief, which is, in all particulars, in accord with the printed suggestions this court heretofore made as to the preparation of briefs.

The judgment will be affirmed.

BARNES, P. J., and GEIGER, J., concur.

## APPLICATION FOR REHEARING.

No. 3634. Decided October 22, 1943.
BY THE COURT:

Submitted on application for rehearing. The application presents no question which we did not consider and discuss in our original opinion. It will be denied.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.